Filed 6/18/14

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| STEVE ALLEN et al., | |
| Plaintiffs and Appellants, | C068985 |
| v. | (Super. Ct. No. 169050) |
| WALLACE LIBERMAN et al., | |
| Defendants and Respondents. | |

APPEAL from a summary judgment of the Superior Court of Shasta County, Monica Marlow, Judge. Affirmed.

Law Office of Mark R. Swartz, Mark R. Swartz and Elizabeth A. O'Brien for Plaintiffs and Appellants.

Law Offices of Beasley & Mittry, Inc., Patrick R. Beasley and Andreas A. Mittry for Defendants and Respondents.

This case involves the application of California's social host immunity law.

Shelby Allen was 17 years old when she went for a sleepover at the home of her 16-year-

1

old friend Kayli Liberman.[1]  After Kayli's parents went to bed, Shelby obtained vodka from the Libermans' bar, consumed 15 shots, began vomiting and passed out.  Kayli propped Shelby's head against the toilet, took Shelby's cell phone, closed the bathroom door and went to bed.

The next morning, Kayli told her father they had been drinking and Shelby had been sick.  The father went to work without checking on Shelby because he had been told Shelby was okay and he did not want to invade the space of a teenage female behind a closed bathroom door.

When another friend checked on Shelby later that morning, it did not sound like Shelby was breathing.  The friend informed Kayli's sister, who called Kayli's father at work.  Kayli's father returned home to check on Shelby.  He could not find a pulse and Shelby did not appear to be breathing, so the father called 911 and began administering cardiopulmonary resuscitation (CPR).  Shelby was pronounced dead later that morning.  Her blood alcohol content was 0.339 at the time of death.

Shelby's parents, Steve and Debbie Allen, sued Kayli Liberman and her parents, Wallace and Debby Liberman, for wrongful death.  The trial court ultimately granted the Libermans' motion for summary judgment, ruling that the lawsuit brought by Shelby's parents is barred by California's social host immunity statute.  (Civ. Code, § 1714, subd. (c).)[2]

As relevant to this appeal, the social host immunity statute provides that "no social host who furnishes alcoholic beverages to any person may be held legally accountable for damages suffered by that person . . . resulting from the consumption of those beverages." (§ 1714, subd. (c).)  In 2010 -- apparently inspired by Shelby's death -- the Legislature

---

[1]  We will occasionally refer to the parties by their first names for clarity.

[2]  Undesignated statutory references are to the Civil Code.

created an exception to social host immunity. The exception states that social host immunity does not prevent a lawsuit against a parent or other adult who knowingly furnishes alcoholic beverages at his or her residence to a person whom he or she knows, or should have known, to be under 21 years of age. (§ 1714, subd. (d)(1).) Here, however, the Allens do not contend that Kayli's parents knowingly furnished the vodka to Shelby, and in any event, the Allens do not claim the new exception applies retroactively to their lawsuit.

Rather, the Allens now contend (1) the Libermans' conduct falls outside the parameters of the social host immunity statute, (2) the social host statute does not provide blanket immunity to Kayli's parents because they owed Shelby an independent duty of care, and (3) there are triable issues of fact as to whether Kayli breached a duty to exercise reasonable care in rendering aid to Shelby and whether Kayli increased Shelby's risk of harm.

Shelby died of acute ethanol intoxication. Applying the law in effect at the time of Shelby's death, although the Libermans could have done more to protect, supervise or aid Shelby, they are not liable for furnishing alcohol, making alcohol accessible, or failing to supervise Shelby. Kayli's parents had a special relationship with Shelby because she was an invited guest in their home, but that special relationship, by itself, does not negate the specific statutory social host immunity applicable to these facts. As for Kayli, the Allens do not cite authority imposing a special relationship on a minor who invites another minor to stay the night. Under the circumstances, the trial court did not err in granting the motion for summary judgment.

We will affirm the judgment.

BACKGROUND

In ruling on the summary judgment motion, the trial court determined there were 40 undisputed material facts and it assumed that nine disputed facts would be found in

3

the Allens' favor. We adopt the trial court's factual findings to the extent the Allens do not dispute them on appeal.

On the evening of December 19, 2008, Wallace and Debby Liberman were entertaining in their game room, which contained a fully stocked bar. Kayli Liberman arrived home from a party and, in the presence of her parents, consumed alcohol with her older sister Tori. Shelby Allen and Alyssa Alexander arrived at the Liberman home around 12:30 a.m. after Debby gave permission for them to spend the night there. The Liberman family continued drinking alcoholic beverages, but Shelby and Alyssa did not consume alcohol in the presence of Kayli's parents.

Between 12:30 a.m. and 1:00 a.m., Wallace and Debby went to bed. Wallace suspected that the minors wanted to drink alcohol and cautioned them that although his daughters had permission to do so in their home, he did not have the right to give such permission to Alyssa and Shelby, who should talk to their own parents about the subject. Kayli and Alyssa understood this to mean that the minors were not permitted to drink alcohol. The trial court assumed Wallace did not expressly forbid the minors from drinking alcohol after he went to bed, but implied that they should not do so.

After Wallace and Debby retired for the night, Shelby announced she was going to try to consume 15 shots of vodka. Although all three minors drank vodka, Shelby consumed approximately 15 shots between 1:00 a.m. and 2:00 a.m.

Shelby began vomiting and lost the ability to care for herself. Kayli propped Shelby's head against the toilet, placing a towel for cushioning, and sent a text message to a friend saying she was concerned about Shelby's condition. Kayli said she was freaking out and had no idea what to do. In another text, Kayli said she and Alyssa were throwing up and Shelby was "out." Alyssa "puked everything up" and Shelby was "half snoring" and shaking. Kayli texted that she was scared, and when her friend asked of what, she replied of her parents.

4

When Kayli went to bed, Shelby appeared to be sleeping. Shelby was breathing and making snoring sounds, but Kayli could not wake Shelby up.

For the purposes of ruling on the summary judgment motion, the trial court assumed that the following disputed facts would be resolved in plaintiffs' favor as follows: that Shelby hit her head on the toilet while vomiting violently; that Kayli closed the bathroom door before going to bed; that Kayli took Shelby's cell phone with her; and that Kayli was concerned about Shelby's condition and thought she needed assistance.

Kayli checked on Shelby around 5:50 a.m. Shelby had not moved, but she was still breathing and snoring. Around 8:15 a.m., Kayli told her father they had been drinking alcohol and that Shelby had been sick that morning. Wallace did not check on Shelby before leaving for work at his veterinary clinic; he decided not to check on her because she was a teenage female in the bathroom, he did not want to invade her space, and he was told she was okay. For the purposes of ruling on the summary judgment motion, the trial court assumed that the following disputed facts would be resolved in plaintiffs' favor as follows: Kayli told Wallace that Shelby had been vomiting; the bathroom door was closed when Wallace walked past it; and Wallace heard something in the bathroom and thought it was Shelby "kicking around."

Sometime between 8:00 a.m. and 9:00 a.m., Alyssa checked on Shelby and found her in the same position against the toilet. It did not sound like she was breathing. Alyssa notified Kayli's older sister, who notified Wallace at his clinic. Wallace returned home and found Shelby on the bathroom floor. He could not find a pulse and she did not appear to be breathing. He telephoned 911 and began to perform CPR.

Deputy Wallace, who responded to the scene at 9:13 a.m., detected a faint pulse and found Shelby warm to the touch. Shelby was pronounced dead at 9:40 a.m. by the Shasta County coroner. Her blood alcohol content was 0.339 at the time of death. The autopsy report stated that the cause of Shelby's death was acute ethanol intoxication.

Shelby's parents, Steve and Debbie Allen, filed a wrongful death action against Wallace, Debby and Kayli. The Allens alleged that Kayli furnished Shelby with alcohol knowing that she intended to consume 15 shots of vodka, and left her unattended in the bathroom after she became intoxicated and unconscious. Kayli took Shelby's cell phone, which prevented Shelby from calling for help, and Kayli did not seek medical help for Shelby or seek her parents' assistance. The lawsuit further alleged that Kayli had an affirmative duty to help Shelby, because Shelby was a guest in Kayli's home and because Kayli undertook to care for Shelby by placing Shelby in the bathroom, with her head on the toilet. In addition, the Allens alleged that Wallace and Debby had a duty to supervise Shelby as a minor guest in their home. Despite knowing that Shelby was interested in drinking alcohol, they left her with unsupervised access to their bar and did not check on her to make sure she was not drinking. Had they checked on Shelby, they would have put a stop to her drinking or discovered that she was unconscious and summoned help, thereby preventing her death.

The Libermans filed a motion for summary judgment. In support, they submitted a declaration from S. Franklin Sher, M.D., a forensic toxicologist. Dr. Sher opined that for a person of Shelby's size, the 15 shots of alcohol Shelby consumed in one hour was a lethal dose of alcohol. Moreover, according to Dr. Sher, "[t]he lethal effects of the alcohol consumed by [Shelby] would not have been medically reversible 30 minutes after she completed the consumption of the lethal dose of alcohol."

The Allens responded with the declaration of Dr. Robert Anthony, a forensic pathologist and toxicologist. Dr. Anthony found Dr. Sher's opinion conclusory, adding that it was contradicted by Kayli's statement that Shelby was breathing at 5:00 a.m., and by evidence that Shelby had a faint pulse at 9:13 a.m. Dr. Anthony declared "there is no mathematical formula which is capable of determining precisely when a person who is suffering from alcohol poisoning cannot be saved. . . . The only reliable statement that

6

can be made is that without appropriate medical intervention, a person suffering from acute alcohol poisoning will die."

Dr. Anthony said maintenance of respiratory function is critical for these patients, and a respirator can be used to sustain their breathing artificially. He said a steady flow of oxygen keeps the patient alive until the alcohol is out of the patient's system. Acute alcohol poisoning affects a person's ability to breathe, and as respiratory function diminishes, the oxygen supply to the brain decreases, followed by irreversible brain damage resulting in death. Dr. Anthony was "concerned that the final or terminal positioning of [Shelby's] head on the toilet seat or its rim most likely affected her ability to breathe by restricting the air flow into her body thereby increasing her risk of asphyxiation." However, Dr. Anthony did not declare that this contributed to or proximately caused Shelby's death, or that Shelby died of asphyxiation.

The trial court granted the Libermans' motion for summary judgment. The trial court ruled that the lawsuit was barred by the social host immunity statute. (§ 1714, subd. (c).) In addition, the trial court ruled that Wallace, Debby and Kayli did not owe, or did not breach, an independent duty to Shelby.

STANDARD OF REVIEW

A defendant moving for summary judgment meets its burden of showing that a cause of action has no merit by either (1) showing that one or more elements of the cause of action cannot be established, or (2) establishing a complete defense. (Code Civ. Proc., § 437c, subds. (o), (p)(2).) Thus, it is essential to identify the issues framed by the pleadings, because defendant's motion must respond to those allegations. (*Gutierrez v. Girardi* (2011) 194 Cal.App.4th 925, 931; *Hamburg v. Wal-Mart Stores, Inc*. (2004) 116 Cal.App.4th 497, 503.) The defendant's motion shall be granted if the admissible evidence submitted shows there is no triable issue as to any material fact and the defendant is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subds. (c), (d); *Hayman v. Block* (1986) 176 Cal.App.3d 629, 638.)

7

Although our review of a summary judgment is de novo, "[w]e must presume the judgment is correct . . . ." (*Jones v. Department of Corrections & Rehabilitation* (2007) 152 Cal.App.4th 1367, 1376.) " '[D]e novo review does not obligate us to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues. As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority. In other words, review is limited to issues which have been adequately raised and briefed.' [Citation.]" (*Claudio v. Regents of University of California* (2005) 134 Cal.App.4th 224, 230.)

DISCUSSION

I

The Allens contend the Libermans' conduct falls outside the parameters of section 1714, and thus social host immunity does not apply.

In 1978 the Legislature changed the nature of tort liability for those who provide alcoholic beverages in a social setting by granting the furnishers of alcoholic beverages "sweeping civil immunity" (*Strang v. Cabrol* (1984) 37 Cal.3d 720, 724 (*Strang*)) and imposing "sole and exclusive liability upon the consumer of alcoholic beverages" for any injury resulting from the consumer's intoxication. (*Cory v. Shierloh* (1981) 29 Cal.3d 430, 440 (*Cory*).) It did so by adding subdivision (c) to section 1714, which provides that "no social host who furnishes alcoholic beverages to any person may be held legally accountable for damages suffered by that person, or for injury to the person or property of, or death of, any third person, resulting from the consumption of those beverages." Similar language was adopted in Business and Professions Code section 25602, subdivision (b), providing immunity from civil liability for selling, serving or furnishing alcoholic beverages to an obviously intoxicated person.

The social host immunity statutes were enacted in response to three California Supreme Court opinions upholding civil liability for furnishing alcohol under certain

8

circumstances. (*Cory, supra,* 29 Cal.3d at pp. 434-436.) The Legislature adopted language expressing its intent that "the furnishing of alcoholic beverages is not the proximate cause of injuries resulting from intoxication . . . ." (§ 1714, subd. (b).) Rather, "the voluntary consumption of alcohol, and not its furnishing by a social host, is the proximate cause of injury resulting from the use of alcohol." (*Biles v. Richter* (1988) 206 Cal.App.3d 325, 330 (*Biles*); *Strang, supra*, 37 Cal.3d at pp. 727-728; § 1714, subd. (b); Bus. & Prof. Code, § 25602, subd. (c).)[3]

_____

[3] The Allens do not contend that other grounds for civil or criminal liability apply in this case. Business and Professions Code section 25602, subdivision (a), states: "Every person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverage to any habitual or common drunkard or to any obviously intoxicated person is guilty of a misdemeanor." And Business and Professions Code section 25602.1 provides that a civil action may be maintained against persons selling liquor to an obviously intoxicated minor under certain specified circumstances. (*Ennabe v. Manosa* (2014) 58 Cal.4th 697, 707-710.) In addition, the Legislature added another exception to social host immunity in 2010. It amended section 1714 to add the following: "(d)(1) Nothing in subdivision (c) shall preclude a claim against a parent, guardian, or another adult who knowingly furnishes alcoholic beverages at his or her residence to a person whom he or she knows, or should have known, to be under 21 years of age, in which case, notwithstanding subdivision (b), the furnishing of the alcoholic beverage may be found to be the proximate cause of resulting injuries or death. [¶] (2) A claim under this subdivision may be brought by, or on behalf of, the person under 21 years of age or by a person who was harmed by the person under 21 years of age." According to an Assembly Bill Analysis of Assembly Bill No. 2486, as amended on June 29, 2010, it appears the statute was amended as the result of Shelby's death. The Bill Analysis provides: "In support of the narrow approach taken in the bill, the author underscores the measure is not about somehow imposing 'automatic liability' on any adult who may have inadvertently provided access to alcohol by a minor. The bill simply removes the absolute bar to any potential liability in any situations for adult social hosts who knowingly provide alcohol to minors. Under the bill, the families of a minor injured or killed by alcohol will still need to prove in court all the elements of negligence -- that an adult social host, as narrowly defined below, breached his or her responsibility to uphold the law, knowingly provided alcohol to the child, and injuries or death thereby resulted from this action. [¶] The recent tragedy of Shelby Allen has helped inspire this measure." The Bill Analysis added: "Shelby's parents . . . were shocked to discover, as many other parents have, that unlike most other states, California's current law continues to grant all social hosts complete and unqualified immunity from all legal responsibility,

9

Since 1978, social host immunity has been interpreted to apply to the failure to supervise individuals who drink alcohol at social events. Thus, "to the extent plaintiff's theory of liability rests on defendants' failure to supervise their guests to whom they had furnished alcohol, defendants are shielded by immunity. [Citation.]" (*Biles, supra,* 206 Cal.App.3d at p. 331.) If the "failure to supervise" theory of liability was enough to circumvent the social host immunity statutes, the immunity would be "seriously eroded" because "the duty of supervision is premised upon the need to look after those whose coordination and judgment have been adversely affected by the consumption of alcohol. If allowed, the duty would appear to exist in many if not most cases where alcohol is furnished by social hosts." (*Id.* at p. 331; see also *Zieff v. Weinstein* (1987) 191 Cal.App.3d 243, 249–250; *DeBolt v. Kragen Auto Supply, Inc.* (1986) 182 Cal.App.3d 269, 274–275.)

The Allens' complaint asserts, among other things, that the Libermans are liable for wrongful death because Shelby consumed vodka obtained from the Libermans' open bar, Kayli "furnished, provided and supplied" the vodka to Shelby, and Wallace and Debby failed to supervise Shelby. As we have explained, however, pursuant to the law at the time of Shelby's death, the Libermans are not liable for furnishing the alcohol that caused Shelby's death or for failing to supervise Shelby.

The Allens acknowledge the allegation in their complaint that Kayli "furnished, provided and supplied" the vodka to Shelby, but they now seek to minimize it, arguing that it "does not constitute admissible evidence" for the purposes of a motion for

even in cases involving the deaths of minors. [¶] Shelby's tragic death is just one example of the devastating consequences that can follow underage drinking. As a result, many groups, such as the American Academy of Pediatrics and the PIRE Institute noted earlier, recommend our legal system should discourage parents from allowing underage drinking in the home, and they strongly support the establishment and enforcement of targeted social host laws like the one proffered in this measure to reduce access to alcohol by underage youth." (Assem. Com. on Judiciary, com. on Assem. Bill No. 2486 (2009-2010 reg. sess.) June 29, 2010 [proposed amendment].)

10

summary judgment. Rather, they claim social host immunity does not apply here because there is no evidence that the Libermans actually "furnished" the alcohol to Shelby, as required by the statutory language. Relying on *Sagadin v. Ripper* (1985) 175 Cal.App.3d 1141, the Allens maintain there must be some affirmative step to supply the alcohol to the drinker for it to be regarded as furnishing alcohol. According to the Allens, because the Libermans did not furnish alcohol to Shelby, the social host immunity statute does not apply and they may be held liable for negligently supervising her.

We disagree with the Allens' ultimate conclusion. " ' "[I]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend." [Citations.]' " (*Horwich v. Superior Court* (1999) 21 Cal.4th 272, 276.) It would not make sense to interpret the statute in a manner that gives a person immunity for directly handing a drink to a minor, but affords no similar protection to a person who fails to lock up the liquor cabinet to prevent the minor from helping herself to alcohol. Indeed, applicable case law does not support the Allens' interpretation of the social host immunity law. (*Andre v. Ingram* (1985) 164 Cal.App.3d 206, 208 [section 1714 "applies with even greater force" where the host did not furnish the alcohol]; cf. *Leong v. San Francisco Parking, Inc.* (1991) 235 Cal.App.3d 827, 833-834 [interpreting Business and Professions Code section 25602 as barring suit against those who simply permit the consumption of alcohol on their premises as well as against those who furnish the alcohol].) The Libermans are immune from liability pursuant to section 1714 even if they did not directly furnish the alcohol to Shelby, but simply failed to prevent her from drinking the alcohol available in their home.

## II

The Allens next contend the social host statute does not provide blanket immunity to Kayli's parents because they owed Shelby an independent duty of care as adults supervising a minor invitee in their home. They rely on *Harris v. Trojan Fireworks Co.*

11

(1981) 120 Cal.App.3d 157 (*Harris*) and *Williams v. Saga Enterprises, Inc*. (1990) 225 Cal.App.3d 142 (*Williams*).

*Harris, supra*, 120 Cal.App.3d 157, is distinguishable because in that case, the plaintiffs (parents of the decedent) pleaded sufficient facts to prove that a car accident caused by the defendant's intoxicated employee occurred within the scope of employment, and that respondeat superior liability could be established. (*Id*. at pp. 160, 165.) The Court of Appeal in *Harris* noted that the holding was not based on the employer furnishing alcohol to its employee. (*Id*. at p. 165, fn. 7.)

*Williams, supra,* 225 Cal.App.3d 142, is also inapposite. In that case, the plaintiff was injured by a restaurant patron who was intoxicated when he left the restaurant. (*Id.* at pp. 145-146.) The patron was a regular customer who would give his car keys to the bartender whenever he came to the restaurant. (*Id.* at p. 150.) There was evidence of "an arrangement or agreement" that the manager would only return the car keys if the patron was able to safely drive his car when he left. (*Id.* at p. 150.) Based on that evidence, the plaintiff argued the manager's actions as a " 'good Samaritan' " made the immunity in section 1714 and Business and Professions Code 25602 inapplicable. Instead, the case was within the parameters of section 324A of the Restatement Second of Torts, which states: " 'One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking if, [¶] (a) his failure to exercise reasonable care increases the risk of such harm, or [¶] (b) he has undertaken to perform a duty owed by the other to the third person, or [¶] (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.' " (*Williams, supra,* at p. 151, fn. omitted.) The appellate court concluded that the evidence was sufficient to create a triable issue of fact as to the applicability of section 324A of the Restatement Second of Torts. (*Williams, supra,* 225 Cal.App.3d at p. 151.)

Under established common law principles, a person has no duty to come to the aid of another unless there is some special relationship between them which gives rise to a duty to act. (*Van Horn v. Watson* (2008) 45 Cal.4th 322, 324; *Williams v. State of California* (1983) 34 Cal.3d 18, 23.) For example, business proprietors such as shopping centers, restaurants, and bars have a special relationship with their patrons giving rise to a duty to maintain their premises in a reasonably safe condition, and a duty to undertake relatively simple measures such as providing assistance to patrons who become ill or need medical attention. (*Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224, 229; *Taylor v. Centennial Bowl, Inc.* (1966) 65 Cal.2d 114, 121; *Breaux v. Gino's, Inc.* (1984) 153 Cal.App.3d 379, 382.) In addition, although there is generally no duty to render aid, if a person elects to come to someone's aid -- a " 'good Samaritan' " -- the person has a duty to exercise due care and is liable if (a) his or her failure to exercise such care increases the risk of harm, or (b) the harm is suffered because of the other's reliance upon the undertaking. (*Van Horn v. Watson, supra,* 45 Cal.4th at p. 324; *Williams v. State of California, supra,* 34 Cal.3d at p. 23.)

Here there is no evidence that Wallace or Debby Liberman acted as good Samaritans at any point before Shelby stopped breathing. They did not supervise Shelby, they did not prevent her from drinking alcohol, and they did not assist her overnight after she passed out. Although they had a special relationship with Shelby because she was a minor invited into their home (*Margaret W. v. Kelley R.* (2006) 139 Cal.App.4th 141, 152), that relationship, by itself, does not negate the specific statutory social host immunity applicable to these facts. (Cf. *Elizarraras v. L.A. Private Security Services, Inc.* (2003) 108 Cal.App.4th 237, 242-244 [security guards employed in part to ensure that minors were not consuming alcohol had a special relationship with business patrons, but were immune from liability under Business and Professions Code section 25602 in a civil action premised on the guards' failure to prevent a minor from drinking and their failure to summon medical help].)

13

Wallace's effort to perform CPR could be construed as the act of a good Samaritan, but there is no evidence that his resuscitation attempt caused harm. Shelby died of acute ethanol intoxication.

III

The Allens also claim there are triable issues of fact as to whether Kayli breached a duty to exercise reasonable care in rendering aid to Shelby and whether Kayli increased Shelby's risk of harm. They argue Kayli had a duty to summon aid for Shelby and had a duty not to make Shelby's situation worse, which Kayli did when she propped Shelby's head on the toilet, took her cell phone, and shut the bathroom door.

There is no doubt that Kayli could have done much more to protect or aid Shelby. But the Allens have not established a legally recognized special relationship under which Kayli had a duty to render such assistance. As we explained in part II, special relationships exist in certain circumstances, but Kayli was not a business proprietor, Shelby was not her customer, and Kayli was not an adult who had invited a minor into her home. Kayli was a minor herself. The Allens do not cite authority imposing a special relationship on a minor who invites another minor to stay the night.

The Allens cite *People v. Oliver* (1989) 210 Cal.App.3d 138 (*Oliver*), in which the Court of Appeal upheld a conviction for involuntary manslaughter. (*Id.* at p. 143.) In that case the defendant knew that the decedent was extremely drunk and drove him to her home; in doing so, the defendant took him from a public place where others might have protected him, to her home where she alone could provide such care. (*Oliver, supra*, 210 Cal.App.3d at p. 149.) At her home, she allowed the decedent to use her bathroom and to inject himself with narcotics. (*Ibid.*) She brought him a spoon, knowing that he wanted the spoon to take drugs. (*Oliver, supra*, 210 Cal.App.3d at p. 143.) After he collapsed in the living room, she left him there and went back to the bar, ultimately directing her daughter to drag him outside in case he woke up. (*Ibid.*) There was substantial evidence that the defendant knew or should have known that the decedent's

14

condition was critical, that immediate medical aid was necessary, and that the failure to summon aid tended to endanger the decedent's life. (*Oliver, supra*, 210 Cal.App.3d at p. 150.) The defendant's ex-husband had died of a drug overdose, and the defendant believed the people who were with her ex-husband waited too long in seeking medical help. (*Ibid.*) The Court of Appeal held that the defendant had established a relationship with the decedent giving rise to a duty to summon aid when the decedent collapsed. (*Oliver, supra*, 210 Cal.App.3d at p. 149.) The circumstances also supported a jury finding that she breached her duty and in fact committed gross negligence sufficient to support criminal liability. (*Id.* at pp. 149-150.)

Of course, there is no social host immunity for aiding and abetting a person's heroin use, an important distinction between *Oliver* and the present case. Moreover, although a good Samaritan might be liable if they do not exercise due care and cause harm (*Van Horn v. Watson, supra,* 45 Cal.4th at p. 324), in this case Shelby died of acute ethanol intoxication. Her consumption of vodka was the proximate cause of her death. (*Biles, supra,* 206 Cal.App.3d at p. 330; § 1714, subd. (b).)

### DISPOSITION

The judgment is affirmed.

<u>          MAURO          </u> , J.

We concur:

<u>      RAYE       </u> , P. J.

<u>      HOCH       </u> , J.