Filed 4/1/26  P. v. Vasquez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Lassen)

----

| | |
|---|---|
| THE PEOPLE, | C102449 |
| Plaintiff and Respondent, | (Super. Ct. No. 2023-CR0089856) |
| v. | |
| ROGER ALBERTO VASQUEZ, | |
| Defendant and Appellant. | |

Defendant Roger Alberto Vasquez and codefendant Douglas Leon were inmates on a prison yard when they attacked and stabbed another inmate to death.  At the trial of both defendants, a jury found defendant guilty of first degree murder and custodial possession of a weapon, and found true the special circumstance allegation that the murder was committed by means of lying in wait.  On appeal, defendant contends insufficient evidence supports the lying-in-wait special circumstance finding, the trial court erred by denying his motion for sanctions predicated on the failure to preserve

1

surveillance video of the hours leading up to the stabbings, and insufficient evidence supports the finding that the stabbings caused Herrera's death. We disagree with defendant's claims and affirm the judgment.

## FACTS AND PROCEEDINGS

*Law Enforcement Testimony*

On November 27, 2019, just before 3:00 p.m., correctional officer Randall Roberts was working as a yard officer at High Desert State Prison in Lassen County. Yard time for the inmates ran from 1:00 p.m. to approximately 3:30 p.m. From about 50 yards away, Roberts saw two inmates, later identified as defendant and codefendant Leon, striking another inmate, later identified as Edgardo Herrera. Another officer ordered the inmates on the yard to get down. All the inmates on the yard assumed seated or prone positions except for defendant and Leon, who continued to strike Herrera. Roberts and his partner moved quickly toward the incident, and called for more officers to respond. As Roberts approached the fighting inmates, he saw defendant and Leon each holding a piece of dark flat metal in their right hands as they struck Herrera, who did not appear to be armed.

When he was about 15 feet away from the altercation, Roberts threw an oleoresin capsicum (O.C.) grenade.[1] It landed on Herrera's chest and detonated. The O.C. grenade burst did not stop defendant and Leon from attacking Herrera.

Another officer threw a second O.C. grenade, and officers sprayed defendant and Leon in the face with O.C. spray. Defendant and Leon eventually stopped attacking and separated from Herrera, and Leon tossed his weapon as he was getting into the prone position. Defendant and Leon were handcuffed, and medical personnel arrived to administer aid to Herrera.

---

[1] An O.C. grenade is a nonlethal chemical agent dispensing device commonly used to quell disturbances on prison yards. O.C. is similar to pepper spray.

Officers located the weapons used in the attack; they were nearly identical pieces of metal that were seven-inches long and one-inch wide. Weapons like those used to stab Herrera were illegal, and inmates were prohibited from possessing weapons.

*Surveillance Video*

The jury was shown, and Officer Roberts testified about, a surveillance video from the prison yard that began approximately 18 seconds before defendant and Leon initiated their attack on Herrera.[2] At the beginning of the video, defendant and Leon were standing approximately 15 yards from Herrera, near a concrete block that contained outdoor urinals and a water fountain. Defendant appeared to use the urinal while Leon stood on the other side of the concrete block, drinking from the water fountain. Herrera and another inmate were alternating sets of pushups. Defendant and Leon glanced at Herrera several times. As the other inmate finished his set of pushups, indicating that Herrera was about to begin his set, defendant walked to the other side of the concrete block and appeared to grab an object from underneath the water fountain. When Herrera moved into a prone position to perform his set of pushups, defendant and Leon immediately rushed toward Herrera. Herrera continued performing pushups, and did not appear to notice defendant and Leon approaching him. Herrera stood up after completing three pushups. As Herrera began to turn his head toward them, defendant and Leon attacked him, stabbing him repeatedly. Approximately 30 seconds later, an O.C. grenade detonated on Herrera's chest, and defendant and Leon continued stabbing Herrera. Two seconds after that, multiple officers appeared on screen and began spraying O.C. at defendant and Leon, and a second O.C. grenade detonated near the men. Approximately

---

[2] Before trial, defendant filed a motion claiming a due process violation on the basis of prison staff's failure to retain additional surveillance footage of his movements on the date of the stabbing. The trial court denied defendant's motion; we address defendant's challenge to that ruling in the Discussion, *post*.

10 seconds later, Leon and defendant separated from Herrera.  The surveillance video shows copious amounts of blood on or near Herrera, who died in the hospital.

*Pathologist Testimony*

Dr. Julie Shrader, a forensic pathologist, performed a forensic autopsy on Herrera. Dr. Schrader concluded that Herrera's death was caused by multiple stab wounds; he was stabbed 74 times.  Dr. Schrader noted that Herrera had also suffered broken ribs, some of which were likely caused by medical personnel performing CPR.

Dr. Schrader was aware that O.C. spray or pepper spray had been used on Herrera, but she could not recall whether she knew at the time she performed the autopsy that an O.C. grenade had detonated on Herrera's chest.  She acknowledged that O.C. spray could have entered openings to Herrera's brain and lungs caused by stab wounds, but she did not analyze the effects of O.C. spray because she did not know to conduct that analysis. However, Dr. Schrader testified that the stab wounds created only "very, very, very, small" holes in Herrera's head, and it would be "a stretch" to believe that significant amounts of O.C. powder would have entered Herrera's brain through those holes.  While she agreed it was impossible to know whether Herrera's death was caused by O.C. spray entering his brain or lungs, she had performed autopsies on inmates who had O.C. powder on their bodies, and she had never encountered a situation in thousands of autopsies where death was caused by O.C. powder or pepper spray.  Additionally, while Dr. Schrader acknowledged that she had never conducted an autopsy on a person who had had an O.C. grenade detonate on their chest, that fact did not change her opinion that Herrera's death was caused by multiple stab wounds.

*Procedure*

A jury found defendant and Leon guilty of first degree murder (Pen. Code, § 187, subd. (a); count I)[3] and custodial possession of a weapon (§ 4502, subd. (a); count II).  As to count I, the jury found true the special circumstance allegation that the murder was committed by means of lying in wait.  (§ 190.2, subd. (a)(15).)  In a bifurcated court trial, the court found true that defendant had previously been convicted of two serious felonies within the meaning of section 667, subdivisions (b) through (i), and section 1170.12.

The trial court sentenced defendant on count I to life in prison without the possibility of parole.  The court sentenced defendant on count II to a concurrent term of three years, doubled pursuant to the prior strike conviction.[4]

Defendant timely filed a notice of appeal.  The case was fully briefed in December 2025 and assigned to the current panel the following month.

## DISCUSSION

### I

### *Insufficient Evidence of Lying In Wait Claim*

Defendant contends insufficient evidence supports the jury's true finding on the lying-in-wait special circumstance.  We disagree.

A.  *Standard of Review*

The standard for assessing the sufficiency of the evidence is well settled.  "We ' " 'must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is

---

[3]  Further undesignated statutory reference are to the Penal Code.

[4]  There is a discrepancy between the oral pronouncement of judgment and the minute order and abstract of judgment.  As we will explain in the Discussion, *post*, we resolve this discrepancy in favor of the minute order and abstract of judgment, which both reflect the authorized sentence of double the applicable term.

reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " ' " (*People v. Parker* (2022) 13 Cal.5th 1, 58.) " 'We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] . . . "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." ' " (*People v. Nelson* (2011) 51 Cal.4th 198, 210.) We do not reweigh evidence. (*Ibid*.) The effect of this standard of review is that a defendant challenging the sufficiency of the evidence bears a heavy burden on appeal. (*People v. Powell* (2011) 194 Cal.App.4th 1268, 1287.) Reversal based on insufficient evidence is warranted only if "it appears 'that upon no hypothesis whatever' " is there sufficient evidence to support the jury's finding. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) " '[I]t is the jury, not the appellate court which must be convinced of the defendant's guilt.' " (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1055-1056.)

B. *Legal Background*

"Murder is the unlawful killing of a human being . . . with malice aforethought." (§ 187, subd. (a).) Murder by means of lying-in-wait is a type of first degree premeditated murder. (*People v. Brown* (2023) 14 Cal.5th 453, 461-462; see § 189, subd. (a) [describing first degree murder as including a murder that is perpetrated by means of lying in wait].)

Section 190.2 provides for enhanced punishment (life without the possibility of parole or death) if the defendant intentionally killed the victim by means of lying in wait. (§ 190.2, subd. (a)(15).) The lying-in-wait special circumstance includes the elements of first degree lying-in-wait murder (§ 189, subd. (a)), but requires the additional element that the killing was intentional, not merely committed with implied malice. (*People v. Flinner* (2020) 10 Cal.5th 686, 748; see *People v. Gutierrez* (2002) 28 Cal.4th 1083, 1148-1149 [lying-in-wait special circumstance requires " 'an intentional murder,' "

6

whereas first degree murder by means of lying in wait requires " 'only a wanton and reckless intent to inflict injury likely to cause death' "].) Thus, if substantial evidence supports the lying-in-wait special circumstance, it necessarily supports the theory of first degree lying-in-wait murder. (*Flinner*, at p. 748.)

To prove the lying-in-wait special circumstance, the prosecution must prove there was an intentional murder, committed under circumstances which include: (1) a concealment of purpose; (2) a substantial period of watching and waiting for an opportune time to act; and (3) a surprise attack on an unsuspecting victim from a position of advantage. (*People v. Parker*, *supra*, 13 Cal.5th at p. 58; see also CALCRIM No. 728.) "The purpose of the watching and waiting element is to distinguish those cases in which a defendant acts insidiously from those in which he acts out of rash impulse. [Citation.] This period need not continue for any particular length ' "of time provided that its duration is such as to show a state of mind equivalent to premeditation or deliberation." ' [Citation.] ' " 'The element of concealment is satisfied by a showing " 'that a defendant's true intent and purpose were concealed by his actions or conduct. It is not required that he be literally concealed from view before he attacks the victim.' " ' " ' [Citation.] The factors of concealing murderous intent, and striking from a position of advantage and surprise, 'are the hallmark of a murder by lying in wait.' " (*People v. Stevens* (2007) 41 Cal.4th 182, 202, fn. omitted (*Stevens*); see *People v. Anh The Duong* (2020) 10 Cal.5th 36, 67 [concealment is conduct that puts the defendant in a position of advantage, from which the factfinder can infer that lying in wait was part of the defendant's plan to take the victim by surprise].)

C. *Analysis*

Defendant argues insufficient evidence supports the finding that he watched Herrera for a substantial period of time and waited for an opportune time to act. Specifically, he argues that the surveillance video showing his conduct for 18 seconds before he attacked Herrera is insufficient to demonstrate that he watched Herrera for a

7

"substantial period of time" for purposes of lying in wait, an officer testified that he could not recall seeing defendant watching Herrera on the surveillance video, and there was no evidence that defendant or Leon manufactured the weapons used to stab Herrera. Defendant also argues that insufficient evidence supports the finding that he concealed his purpose because there is no evidence that he physically concealed himself before attacking Herrera.

Substantial evidence supports the findings that defendant undertook a substantial period of watching and waiting for an opportune time to act, and that he concealed his purpose. A reasonable juror watching the surveillance video admitted into evidence, which we described *ante*, could find that at the beginning of the video and prior to the initiation of the attack, defendant and Leon were concealing their purpose by standing far enough away from Herrera to avoid raising his suspicion (while being close enough to launch their attack at the opportune moment), acting as though they were using the urinal and water fountain, and hiding their weapons under the water fountain. There is no requirement that defendant physically conceal himself prior to the attack. (*Stevens*, *supra*, 41 Cal.4th at p. 202.)

A reasonable juror could also find that defendant watched Herrera for a substantial period of time and waited for the opportune time to act. Defendant points to testimony by a correctional officer that he could not recall defendants watching Herrera in the surveillance video. But based on our review of the surveillance video, it is clear that a reasonable juror watching the video could find that defendant and Leon monitored Herrera's movements by glancing at him while he alternated performing sets of pushups with another inmate, and did so in a way that would not raise Herrera's suspicion. A reasonable juror could also find that defendant and Leon waited for the opportune time to act. Defendant moved from the side of the concrete block with the urinal to the side with the water fountain just as the other inmate completed his set of pushups, and he retrieved his weapon from underneath the water fountain just as Herrera began performing his set

8

of pushups. He and Leon began approaching Herrera while he was in a disadvantaged position--performing pushups--and they accelerated and attacked him at the exact moment he returned to a standing position, but before he could regain situational awareness.

Defendant argues that 18 seconds is insufficient as a matter of law to support a finding of lying in wait. But as we have discussed, there is no particular duration of time required to support a finding of lying in wait. (*Stevens*, *supra*, 41 Cal.4th at p. 202.) "The purpose of the watching and waiting element is to distinguish those cases in which a defendant acts insidiously from those in which he acts out of rash impulse." (*Ibid.*) The duration of defendant's and Leon's observation of Herrera showed " ' "a state of mind equivalent to premeditation or deliberation." ' " (*Ibid*.)

The cases on which defendant relies do not change this result. In *People v. Superior Court (Lujan)* (1999) 73 Cal.App.4th 1123, at page 1128, the reviewing court noted authority concluding that "a period of 'a matter of minutes' is sufficiently substantial." However, the court also recognized that "no particular time period is required for a lying-in-wait special circumstance," and found that a defendant's conduct constituted lying in wait where he located and retrieved the murder weapon, concealed himself between two trucks, waited for the victims to come around a corner, and launched a surprise attack.

Similarly, in *People v. Mendoza* (2011) 52 Cal.4th 1056, the court noted that substantial evidence supported a finding of lying in wait although "only a few minutes" had elapsed between the time an officer initiated an encounter with the defendant and when the defendant killed the officer. But the court concluded that a rational jury could find that the defendant "did not react impulsively to [the officer's] appearance at the scene, but that he watched [the officer] for a substantial period as he not only waited for, but affirmatively engineered, the opportune moment to launch a surprise attack." (*Id*., at p. 1074.)

9

Here, although the retained surveillance video only captured defendant's conduct for the final 18 seconds preceding the attack, he, like the defendants in *Lujan* and *Mendoza*, concealed his purpose while he watched Herrera, waited for the opportune moment to act, and launched a surprise attack when he was at a positional advantage. The two attackers were already waiting in position at the time the available portion of the video commenced, and the weapons had clearly been hidden at some earlier point and were quickly and readily retrieved when the time was right. The attack appeared to be well-coordinated, which takes time. Substantial evidence supports the finding that Herrera's murder was accomplished by means of lying in wait.[5]

II

*Failure to Preserve Evidence Claim*

Defendant contends the trial court erred when it denied his pretrial motion to dismiss the lying-in-wait special circumstance allegation, which he argued was warranted due to prison staff's bad-faith failure to preserve surveillance video of his and Leon's movements throughout the prison on the day of the murder. Defendant has failed to establish error.

A. *Legal Background*

" ' "Due process does not impose upon law enforcement 'an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution.' " [Citation.] At most, the state's obligation to preserve evidence extends to "evidence that might be expected to play a significant role in the suspect's defense." ' " (*People v. Fultz* (2021) 69 Cal.App.5th 395, 424.) Law enforcement agencies have a duty to preserve evidence that is constitutionally

---

[5] We note defendant's argument that there is no evidence that defendant and Leon manufactured their weapons. The absence of evidence regarding who manufactured the weapons does not affect our conclusion.

material; that is, it "possess[es] an exculpatory value that was apparent before the evidence was destroyed" and is "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." (*California v. Trombetta* (1984) 467 U.S. 479, 489; *Fultz*, at p. 424.) Alternatively to proving the exculpatory value of lost evidence, a defendant may show that "potentially useful" evidence was destroyed in bad faith. (*Arizona v. Youngblood* (1988) 488 U.S. 51, 58.) "Potentially useful" evidence is "material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." (*Id.* at p. 57.)

B. *Procedural Background*

Before trial, Leon moved to dismiss the lying-in-wait special circumstance allegation on the basis that his right to due process was violated by prison staff's bad-faith loss or destruction of surveillance video showing defendant's and Leon's movements throughout the day of the incident, beyond the 18-second video of the prison yard immediately before the attack. Defendant joined Leon's motion.

In response, the prosecutor argued that Leon had failed to establish that the destroyed surveillance video was either material or exculpatory.

At a hearing on the motion, Leon acknowledged that he was unable to make an offer of proof as to what was on the lost surveillance footage because he had not been able to review it. However, Leon observed that the prosecution had previously suggested that it would argue lying in wait had occurred during a time before that captured by the retained surveillance video, and argued he could not refute that argument without the benefit of the destroyed surveillance video. He added the destroyed surveillance video could be hypothetically exculpatory as to the lying-in-wait special circumstance if the video showed that Leon and defendant had not been in contact in the hours before the attack. Defendant added, "a video that shows everything that happened before the 18

11

seconds [of the surveillance video that was retained] could be exculpatory and we just don't know."

The prosecutor argued the defense bore the burden to make a prima facie showing that the lost surveillance video was both material and exculpatory, but neither defense attorney had made an offer of proof as to the materiality or exculpatory nature of the lost video.

The trial court denied the motion.

C. *Analysis*

Defendant urges us to apply a de novo standard of review on the basis that his claim requires us to consider the legal question of "what constitutes relief" under *Trombetta*. We decline to do so. In reviewing defendant's *Trombetta/Youngblood* motion, we "must determine whether, viewing the evidence in the light most favorable to the superior court's finding, there was substantial evidence to support its ruling." (*People v. Roybal* (1998) 19 Cal.4th 481, 510.)

Defendant argues that because the prosecution relied on his conduct before the retained portion of the surveillance video to prove the lying-in-wait special circumstance allegation, the lost surveillance video from that timeframe had apparent exculpatory value within the meaning of *Trombetta*. However, the mere possibility that the surveillance video might have been exculpatory does not satisfy the standard of constitutional materiality. (*People v. Alvarez* (2014) 229 Cal.App.4th 761, 773.) No proffer was produced by defendant, who presumably was familiar with his own conduct prior to the commencement of the surveillance video clip. Because there is *no* evidence that the surveillance video had apparent exculpatory value before it was destroyed--as defense counsel acknowledged--substantial evidence supports the trial court's ruling as to defendant's motion under *Trombetta*.

As for defendant's motion under *Youngblood*, defendant's opening brief states the "potentially useful" standard established in *Youngblood* and acknowledges that evidence

12

satisfying only the potentially useful standard must have been destroyed in bad faith, but he offers no analysis whatsoever that the *Youngblood* standard was satisfied here. It is a defendant's responsibility to affirmatively demonstrate error, and appellate review is limited to issues that have been adequately raised and briefed. (*Allen v. Liberman* (2014) 227 Cal.App.4th 46, 53.) Because defendant's brief is deficient on the basis that he has failed to challenge the court's ruling as to his motion under *Youngblood* with any meaningful legal analysis, he has forfeited any challenge to this aspect of the court's ruling. (See *In re S.C.* (2006) 138 Cal.App.4th 396, 408.)

## III

### *Insufficient Evidence of Cause of Death Claim*

Defendant contends insufficient evidence supports the finding that the stabbings were the cause of Herrera's death because "there was no direct evidence of what ultimately caused the victim's death." However, Dr. Schrader, the pathologist who performed the autopsy on Herrera, testified that Herrera's death was caused by the numerous stab wounds inflicted by defendant and Leon. Indeed, she testified unequivocally that her opinion as to the cause of death was not affected by the knowledge that an O.C. grenade detonated on Herrera's chest. Substantial evidence supports the finding that stab wounds caused Herrera's death.

## IV

### *Sentencing Error*

We note a sentencing error not mentioned by either party. According to the reporter's transcript, the trial court sentenced defendant on the count II conviction for custodial possession of a weapon to a concurrent term of three years, *tripled* due to defendant's two prior strike convictions.[6] The tripled sentence was unauthorized.

---

[6] The court stated: "On Count II, it will be the mid term of three years doubled pursuant to -- actually, tripled pursuant to the prior strike, prior two strikes."

Pursuant to section 667, subdivision (e)(2)(C), where a defendant has two or more prior serious or violent felony convictions, but the current offense is not a serious or violent offense--as here (see §§ 667.5, subd. (c); 1192.7, subd. (c))--the defendant is sentenced as a second striker under section 667, subdivision (e)(1).[7]

The correct calculation of defendant's sentence is reflected in the trial court's minutes and the abstract of judgment, which both reflect that defendant's concurrent term of three years on count II was doubled pursuant to his prior strike conviction.

We recognize the general rule that oral pronouncements of the court are presumed correct. (*People v. Mesa* (1975) 14 Cal.3d 466, 471.) However, under these circumstances, we will deem the minute order and the abstract of judgment to prevail over the reporter's transcript. (*People v. Cleveland* (2004) 32 Cal.4th 704, 768; *People v. Smith* (1983) 33 Cal.3d 596, 599.) When the record is in conflict and cannot be harmonized, " 'that part of the record will prevail, which, because of its origin and nature or otherwise, is entitled to greater credence.' " (*Smith*, at p. 599.) The erroneous statement in the reporter's transcript is of no effect.

---

[7] Section 667, subdivision (e)(2)(C) provides for an exception to this rule where the prosecution pleads and proves, as relevant here, that the defendant was armed with a deadly weapon during the commission of the offense. (*Id.* subd. (e)(2)(C)(iii).) The prosecution did not plead that an exception under section 667, subdivision (e)(2)(C) applied here, and it did not seek to apply such an exception at any time. (See *People v. Tennard* (2017) 18 Cal.App.5th 476, 486 [prosecution must plead and prove (1) the defendant has two or more prior strikes, and (2) any of the exceptions in § 667, subd. (e)(2)(C) apply].) Further, even if the exception were to apply here, the court would have been required to sentence defendant as a three-strike offender to an indeterminate term pursuant to section 667, subdivision (e)(2)(A).

## DISPOSITION

The judgment is affirmed.

_____/s/_____
Duarte, J.

We concur:

_____/s/_____
Earl, P. J.

_____/s/_____
Mauro, J.