[No. C001996. Third Dist. Nov. 30, 1988.]

MELVIN BILES, Plaintiff and Appellant, v.
KENNETH RICHTER et al., Defendants and Respondents.

## COUNSEL

Monroy & Weiss and Jon F. Monroy for Plaintiff and Appellant.

Price, Price, Brown & Halsey and Philip B. Price for Defendants and Respondents.

## OPINION

SIMS, J.— In this case we hold that the immunity from tort liability afforded a social host who furnishes alcohol (Civ. Code, § 1714, subd. (c))[1] cannot be circumvented by positing a duty upon the social host to supervise guests to whom he furnished alcohol. (All further statutory references are to the Civil Code unless otherwise indicated.)

Plaintiff Melvin Biles appeals from a judgment dismissing his first amended complaint after a demurrer was sustained without leave to amend. The complaint alleges in pertinent part: "3. During the afternoon of February 19, 1981, plaintiff had consumed a great deal of alcoholic beverages with the defendants, KENNETH and GERALDINE RICHTER (hereinafter referred to as defendants) at various restaurants and social clubs.

"4. Subsequent to leaving the public establishments, the plaintiff and defendants went to defendants' residence located at 19 Linda Drive,

[1] Subdivision (c) of Civil Code section 1714 provides: "No social host who furnishes alcoholic beverages to any person shall be held legally accountable for damages suffered by such person, or for injury to the person or property of, or death of, any third person, resulting from the consumption of such beverages."

Oroville, California and had dinner and continued to consume alcoholic beverages.

"5. While plaintiff and defendants were at defendants' residence, other social guests of defendants arrived at said residence and they too consumed alcoholic beverages and were allowed by defendants to freely help themselves to defendants' alcoholic beverages located in their residence without restriction.

"6. Early in the evening of February 19, 1981, plaintiff was put to bed by defendant KENNETH RICHTER, in a bedroom at the defendants' residence because he had had enough to drink and plaintiff and defendant, KENNETH RICHTER, were going to go together to Sacramento, California early in the day of February 20, 1981, to arrange for a bank loan for plaintiff with the assistance of defendant, KENNETH RICHTER.

"7. On the evening of February 19, 1981, defendant, KENNETH RICHTER, went to sleep at approximately 9:00 p.m. and defendant, GERALDINE RICHTER, went to sleep at approximately 10:00 p.m.

"8. At the time each defendant went to sleep, they knew that plaintiff was asleep in one of the spare bedrooms.

"9. At said time and place, defendants went to sleep knowing that there were still social guests in their living room seated on their couch who had been drinking alcoholic beverages and were smoking cigarettes and who had no restrictions on the use of defendants' bar which contained alcoholic beverages.

"10. At said time and place, when defendants went to sleep, defendants negligently failed to supervise, maintain or inspect their premises or the activities of their social guests leaving them completely unattended with full knowledge that each of their social guests had consumed alcoholic beverages in their presence and were smoking on a couch in their living room.

"11. As a proximate result of the negligence of defendants, a fire occurred on the premises which the Oroville Fire Department has indicated was caused by a discarded cigarette."

Plaintiff suffered mental and physical injuries caused by the fire.

## DISCUSSION

██ ██ In reviewing the sufficiency of a complaint against a general demurrer, " 'We treat the demurrer as admitting all material facts properly

pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.]" (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) ▮ Moreover, "'the allegations of the complaint must be liberally construed with a view to attaining substantial justice among the parties.'" (*Heckendorn* v. *City of San Marino* (1986) 42 Cal.3d 481, 486 [229 Cal.Rptr. 324, 723 P.2d 64], quoting *Youngman* v. *Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 244-245 [74 Cal.Rptr. 398, 449 P.2d 462].)

The trial court concluded defendants owed plaintiff no duty of care upon the facts pleaded. However, we shall assume without deciding that defendants owed plaintiff a duty to exercise reasonable care for his safety either because they were owners of the land where the accident occurred (see e.g., *Isaacs* v. *Huntingon Memorial Hospital* (1985) 38 Cal.3d 112 [211 Cal.Rptr. 356, 695 P.2d 653]; *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]) or because by putting plaintiff to bed defendants acted as "good Samaritans." (*Williams* v. *State of California* (1983) 34 Cal.3d 18, 23 [192 Cal.Rptr. 233, 664 P.2d 137]; see *Lopez* v. *Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 788-789 [221 Cal.Rptr. 840, 710 P.2d 907]; *Sullivan* v. *City of Sacramento* (1987) 190 Cal.App.3d 1070, 1077-1078 [235 Cal.Rptr. 844]; *Parvi* v. *City of Kingston* (1977) 41 N.Y.2d 553 [394 N.Y.S.2d 161, 165, 362 N.E.2d 960]; Rest.2d Torts, §§ 323-324.)

▮ We conclude that, even assuming a duty of care, defendants are not liable to plaintiff. As we shall explain, to the extent plaintiff's injuries were caused by defendants' guests' consumption of alcohol furnished by defendants, defendants are immune from liability pursuant to subdivision (c) of section 1714. To the extent plaintiff's injuries were not caused by the guests' consumption of alcohol, defendants are not liable because they were not negligent as a matter of law for failing to supervise sober adult guests who smoked cigarettes. We address the immunity question first.

It is now firmly established that section 1714, subdivision (c) and Business and Professions Code section 25602, subdivision (b), provide immunities from liability for those who furnish alcohol to others. (E.g., *Strang* v.

*Cabrol* (1984) 37 Cal.3d 720 [209 Cal.Rptr. 347, 691 P.2d 1013]; *Cory* v. *Shierloh* (1981) 29 Cal.3d 430 [174 Cal.Rptr. 500, 629 P.2d 8]; *DeBolt* v. *Kragen Auto Supply, Inc.* (1986) 182 Cal.App.3d 269, 272-273 [227 Cal.Rptr. 258].) This case is governed by section 1714, subdivision (c), which codifies the rule that the voluntary consumption of alcohol, and not its furnishing by a social host, is the proximate cause of injury resulting from the use of alcohol. (See fn. 1, *ante*; § 1714, subd. (b); *Strang* v. *Cabrol, supra,* 37 Cal.3d at pp. 726-727.)

Plaintiff's complaint does not expressly allege that the fire in which plaintiff was injured resulted from defendants' guests' consumption of alcohol furnished by defendants. Nonetheless, we cannot simply disregard the many references throughout the complaint to the guests' consumption of alcoholic beverages. Rather, we are enjoined to give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. (*Blank* v. *Kirwan, supra,* 39 Cal.3d at p. 318.) So read, plaintiff's complaint fairly ascribes the cause of his injuries at least in part to alcoholic beverages furnished by defendants. To that extent, defendants are shielded by social host immunity. (§ 1714, subd. (c); *Strang* v. *Cabrol, supra,* 37 Cal.3d at pp. 725-726.)

 Plaintiff's complaint also alleges defendants "failed to supervise, maintain or inspect their premises or the activities of their social guests leaving them completely unattended with full knowledge that each of their social guests had consumed alcoholic beverages in their presence . . . ." Here, in an apparent attempt to avoid the statutory immunity, plaintiff posits liability not on the act of furnishing alcoholic beverages but on the separate act of failing to supervise persons to whom the beverages were furnished. An analogous claim was recently rejected in *DeBolt* v. *Kragen Auto Supply, Inc., supra,* 182 Cal.App.3d 269.

In *DeBolt* the defendant held a beach party for its employees. (182 Cal.App.3d at p. 271.) One of its employees brought as a guest a minor to whom the defendant served several alcoholic beverages. When the minor became intoxicated and disorderly the defendant asked her to leave the party knowing she would do so by driving her car. The defendant did not provide any alternative transportation or summon her parents, a friend, or the police. On a freeway, the minor struck a motorcycle from behind killing its driver and passenger. (*Id.,* at pp. 271-272.)

In a wrongful death action, the heirs attempted to characterize the defendant's "fault" as ordering the minor to leave and as failing to provide alternative and safer means of transportation, thereby hoping to escape the immunity of section 1714, subdivision (c). However, the court rejected the

attempt explaining: " '[t]he effect of the statute cannot be avoided by alleging the wrong, not as furnishing the alcohol,' but as forcing a person to leave a party or failing to provide safe transportation." (182 Cal.App.3d at p. 274, quoting *Andre* v. *Ingram* (1985) 164 Cal.App.3d 206, 208 [210 Cal.Rptr. 150].)

The *DeBolt* court went on: "In *Andre* v. *Ingram,* a fact pattern not unlike the instant case, there was no allegation the defendant furnished the beverages, but plaintiff alleged the host should have warned her not to get in the car with the driver or should have stopped the driver from driving; failure to do so was a breach. We must agree with the conclusion reached there. Simply put, 'the consumption of alcohclic beverages is the proximate cause of injuries inflicted upon another by an intoxicated person.' [Citations.] If we found liability possible here, soon complaints would be easily couched in language apart from furnishing or selling liquor. Plaintiffs would claim liability for *inviting* a person to a party where drinks are served knowing he/she might become intoxicated, failing to keep someone from driving as in *Andre* v. *Ingram,* or any number of possibilities. '[I]t is [however] the consumption alone . . . of liquor which causes the resultant deaths and injuries.' [Citation.]" (182 Cal.App.3d at pp. 274-275, italics in original.)

■ Plaintiff's attempt to posit liability on defendants' failure to supervise intoxicated guests must be rejected for the reasons outlined in *DeBolt.* If a plaintiff could hold a social host liable for failure to supervise those to whom he had furnished alcohol, the immunity afforded by subdivision (c) of section 1714 would be seriously eroded. This is because the duty of supervision is premised upon the need to look after those whose coordination and judgment have been adversely affected by the consumption of alcohol. If allowed, the duty would appear to exist in many if not most cases where alcohol is furnished by social hosts. We therefore hold that, to the extent plaintiff's theory of liability rests on defendants' failure to supervise their guests to whom they had furnished alcohol, defendants are shielded by immunity. (*DeBolt, supra,* 182 Cal.App.3d at pp. 274-275.)

■■ On the other hand, if the complaint's numerous allusions to the guests' consumption of alcohol are disregarded, defendants are not liable for plaintiff's injuries because they had no obligation to satisfy their duty of care by supervising their sober guests simply because they smoked cigarettes.

The danger associated with smoking on living room furniture is ordinarily appreciated by adults who are sober. To be sure, accidents repeatedly happen when, for example, a person falls asleep on a couch or in bed. But

sober adults are ordinarily alert to the danger and are able to take steps to minimize or avoid it. We do not believe sober adult smokers pose so great a risk that a social host can fulfill his or her duty to a sleeping guest only by being present beside other guests who smoke to supervise them. As a practical matter, a contrary conclusion would require the hosts of large parties to station smoker-watchers next to large potted plants, where they could ever-so-discreetly keep tabs on guests who smoked. While this scene might have played well in a Marx Brothers movie,[2] we do not think contemporary life should imitate art in this instance.

■ "In general, the issue of a defendant's negligence presents a question of fact for the jury. [Citations.] A defendant's negligence may be determined as a matter of law only if reasonable jurors following the law could draw only one conclusion from the evidence presented. [Citation.]" (*Perez* v. *Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 971 [227 Cal.Rptr. 106, 719 P.2d 676].) However, in an appropriate case, a defendant's lack of negligence may be determined as a matter of law. (See *Richards* v. *Stanley* (1954) 43 Cal.2d 60, 66-67 [271 P.2d 23].) ■ This is an appropriate case. The trial court properly sustained defendants' demurrer without leave to amend. (See *Blank* v. *Kirwan, supra,* 39 Cal.3d at p. 318.)

### DISPOSITION

The judgment is affirmed.

Puglia, P. J., and Carr, J., concurred.

On December 27, 1988, the opinion was modified to read as printed above.

---

[2] Condensed screenplay of the never-produced Marx Brothers film, "Smoker-watchers": Groucho arranges with Mrs. Dillingham to have the brothers employed as smoker-watchers at her party. At a pre-party meeting where Groucho announces the job, Chico is incredulous that anyone would hire the brothers for this purpose but Groucho assures him the deal is "legit" because, "Some judge ordered it." At the party, each Marx brother, dressed in a tuxedo, is stationed by a large potted palm. The party dissolves into turmoil when Harpo insists upon tooting his horn at guests who he believes are smoking recklessly.