Filed 7/28/25  Brown v. Furgurson CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THOMAS ROBERT BROWN et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>BONNIE FURGURSON et al.,<br><br>Defendants and Respondents. | B341007<br><br>(Los Angeles County<br>Super. Ct. No. 22STCV25607) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Anne Hwang, Judge.  Affirmed.

Callahan & Blaine, Edward Susolik, Brian J. McCormack, and Brett E. Bitzer for Plaintiffs and Appellants.

Schonbuch Hallissy, Michael Schonbuch and Mary R. Fersch for Defendants and Respondents.

_____

Plaintiffs Thomas Robert Brown and Erin Michelle Brown sued Bonnie Furgurson, James Furgurson, and Katherine Furgurson for the accidental drowning death of the Browns' 24-year-old adult son, Christopher Ryan Brown, in the Furgursons' home pool.[1]  The drowning occurred in the evening at a party where alcohol was available for adult guests.  The Browns' verified complaint made clear that "[b]ut for" the Furgursons permitting Chris to swim "while dangerously intoxicated," Chris would have survived.  The Furgursons moved for judgment on the pleadings under the social host immunity statute, Civil Code section 1714, subdivision (c) (section 1714(c)).[2]  That statute, which our high court has repeatedly characterized as providing " 'sweeping civil immunity' " (*Ennabe v. Manosa* (2014) 58 Cal.4th 697, 707; *Strang v. Cabrol* (1984) 37 Cal.3d 720, 724; *Cory v. Shierloh* (1981) 29 Cal.3d 430, 436), bars a host's liability for injuries resulting from a guest's alcohol consumption.  The court granted the motion and gave the Browns leave to amend their complaint.

The Browns' first amended complaint (FAC) largely omitted allegations relating to Chris's intoxication and alleged instead that physical design defects in the pool along with conditions that interfered with guests rescuing Chris in a timely

---

[1] Because they all share the same surname, for the sake of clarity we refer to Thomas Robert Brown and Erin Michelle Brown collectively as the Browns and to Christopher Ryan Brown as Chris, the name used by appellants' counsel in their briefing. No disrespect is intended. The Browns sued individually and as successors-in-interest of Chris's estate; Thomas Robert Brown also sued in his capacity as the estate's administrator.

[2] Unspecified statutory references are to the Civil Code.

manner caused his death.  The trial court sustained the Furgursons' demurrer, finding the FAC was a sham pleading because it omitted the prior verified allegations that alcohol consumption caused Chris's death and, further, that under section 1714(c), the Browns still failed to state a claim.

The Browns argue that we should reverse because the FAC did not contradict their earlier allegations and therefore was not a sham pleading.  They further argue that the FAC adequately stated a claim because it alleged theories of liability independent of and unrelated to Chris's alcohol consumption and, thus, the social host immunity statute was inapplicable.

As we describe below, the Browns have not demonstrated error.  We thus affirm.

## BACKGROUND

### A.     The Complaint

In a verified complaint, the Browns alleged that on April 17, 2021, the Furgursons hosted a pool party at their Malibu home and "allowed for a chaotic environment where alcohol was provided . . . to encourage and promote dangerous levels of intoxication in [their] pool party guests."  The complaint supported this characterization by referring to alcohol, intoxication, or impairment approximately 30 times.  The complaint further alleged that the Furgursons encouraged guests to use the "poorly lit" pool "until the evening hours without any supervision or safety precautions."  Floating pool toys and murky water due to sunscreen and alcohol being in the water also obstructed visibility.

In the evening, Chris "went under water in the deep end of the pool and remained on the bottom of the pool . . . until he was finally noticed."  The other guests "had consumed a significant

3

amount of alcohol and did not see [Chris] due to the poorly lit swimming pool and surrounding area." The Furgursons were present when Chris was discovered in the bottom of the pool but permitted "a possibly intoxicated . . . guest to struggle alone" to pull Chris out of the pool and relied on "impaired . . . guests to handle the emergency situation."[3] First responders took Chris to the hospital where he died the following morning.

The complaint alleged causes of action for negligence, wrongful death, and premises liability against the Furgursons.[4] The negligence and wrongful death causes of action asserted that the Furgursons were negligent in many ways, including "fail[ing] to provide . . . [supervision of] their guests who were invited . . . to use the swimming pool while impaired," not closing the pool to "impaired" guests, relying on "intoxicated individuals" to

---

[3] The Browns also claimed that the Furgursons' pool lacked safety precautions required by the Swimming Pool Safety Act (Health & Saf. Code, § 115920 et seq.), such as an enclosure surrounding the pool with a self-latching gate or an alarm on the home's doors and windows that would make a continuous sound when a door or window is open. (See *id.*, §§ 115922, subd. (a)(1), (4), 115923, subd. (a).) They claim that the installation of such precautions "could have prevented the dangerously impaired . . . guests from access and use of [the] unsupervised poorly lit swimming pool."

[4] The Browns also alleged a cause of action for "survival" pursuant to Code of Civil Procedure section 377.34. However, "[t]he survival statutes do not create a cause of action. Rather, '[t]hey merely prevent the abatement of the cause of action of the injured person, and provide for its enforcement by or against the personal representative of the deceased.' " (*Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1264.)

4

supervise Chris, and "fail[ing] to use reasonable care . . . in preventing [Chris] and other impaired party guests from access to and using the unsupervised swimming pool despite being aware of the dangerous levels of intoxication and need for supervision."  For the wrongful death and premises liability claims, the complaint alleged that "[b]ut for" the following, Chris would have survived: (1) Chris "being encouraged and permitted to use the poorly lit [pool] in the evening" "while impaired" or "while dangerously intoxicated"; (2) Chris "not being immediately noticed and immediately rescued"; (3) Chris "not being administered immediate rescue breathing"; and (4) the Furgursons not having rescue equipment or rescue breathing instructions accessible.

The Browns attached Chris's death certificate as an exhibit to the complaint.  The medical examiner described the immediate cause of death as drowning and a condition leading to the cause of death as "acute alcohol intoxication."  Under "describe how [the] injury occurred," the medical examiner stated, "drowned after ingesting excess ethanol."  (Capitalization omitted.)

**B.     The Furgursons' Motion for Judgment on the Pleadings**

On March 13, 2024, the Furgursons moved for judgment on the pleadings, arguing the social host immunity statute (§ 1714(c)) barred the Browns' claims.  Citing *Biles v. Richter* (1988) 206 Cal.App.3d 325, the Furgursons also argued the immunity to a social host who furnishes alcohol "cannot be circumvented by positing a duty upon the social host to supervise guests to whom he furnished alcohol."  (*Id*. at p. 327.)

The Browns responded that they did not base their claims solely on the Furgursons serving alcohol to guests or failing to

5

supervise intoxicated guests. Rather, dangerous conditions, including inadequate lighting, "gave rise to an independent duty by the Furgursons . . . that [wa]s completely unrelated to the serving and consumption of alcohol." (Italics and boldface omitted.) They argued "that after sunset, the Furgursons had a duty to either: (1) not allow guests to continue to swim in the pool because of the inadequate lighting; or (2) have guests continue to swim in the pool with a dedicated person watching the guests in the pool in order to ensure that no one was drowning as a result of the dangerous condition that existed in the Furgursons' swimming pool." (Italics and boldface omitted.) The Browns characterized the alcohol-related allegations as "surplusage."

In their reply, the Furgursons argued the Browns' opposition "present[ed] only a claim for failure to adequately supervise intoxicated guests, which is protected under the [s]ocial [h]ost [i]mmunity statute." Further, the Browns did not adequately explain how they could amend their complaint because they were bound by their judicial admission that, but for Chris's intoxication, he would not have drowned.

The court granted the Furgursons' motion. It agreed section 1714(c) precluded liability based upon theories that the Furgursons furnished alcohol or failed to supervise Chris. It also ruled the Browns had not stated a claim that the Furgursons were negligent for not aiding Chris, as they alleged no special relationship giving rise to a duty to come to the aid of another. (*Allen v. Liberman* (2014) 227 Cal.App.4th 46, 57.) "Turning to the alleged defects surrounding the condition of the pool (inadequate lighting[] and visual obstructions), [the Furgursons] d[id] not provide authority which applies the immunity where a condition of property contributes to the injury. . . . However,

6

based on the current allegations in the complaint and the attached death certificate, [Chris's] death was predicated by ingesting 'excess ethanol.' [The Browns'] opposition does not appear to dispute that [Chris's] death was caused by a drowning, preceded by alcohol intoxication. [The Browns] also do not discuss cases applying or distinguishing section 1714(c). Therefore, based on the allegations in the complaint and the attached death certificate, [Chris]'s death resulted from the consumption of alcohol. Given that section 1714(c) provides 'sweeping civil immunity,' the motion for judgment on the pleadings is granted." (Fn. omitted.)

The court granted the Browns' request for leave to amend their complaint. It observed, "It may be that we end up at the same place, but I think that they should be given the opportunity . . . [although] I am a little skeptical . . . [t]hat the [Browns] can actually amend."

**C.    The FAC**

On April 29, 2024, the Browns filed the FAC asserting a single cause of action for "wrongful death/premises liability." They alleged the Furgursons' swimming pool contained physical defects in violation of industry standards and that those defects proximately caused Chris's death. First, the pool's wall to floor radius where Chris went under water "was only a one-foot radius instead of the industry safety standard[] of a five-foot radius." They further alleged that if the radius had been the standard length and given Chris's height of 6 feet 5 inches, his head "would have been above the water, and he never would have gone under water and never would have died." Second, the Browns alleged that the pool bottom had a 40 to 45 percent slope, which was steeper than the industry standard of 33 percent. Third, the

7

pool's bottom was a slippery, dark blue porcelain tile, which made it harder for Chris to get out of the pool and contributed to his drowning. Fourth, the pool had a single and inadequate underwater light, whereas industry standards required four lights. The area surrounding the pool also lacked adequate lighting and the water's condition (due to sunscreen and alcohol in the water), floaties in the pool, and the dark blue tile further obstructed visibility. These conditions contributed to other party guests not seeing Chris for four minutes and 17 seconds. The Browns alleged, "Experts in water safety and drowning will testify that if a drowning victim is pulled from the water in four minutes or less, the victim has a significantly greater chance of survival." Fifth, the Furgursons permitted a chlorine dispenser to remain in the pool, and "the toxic chlorine overwhelmed [Chris] and contributed to him going under water."

The Browns further alleged that the Furgursons did not obtain permits or undergo safety inspections when, in 2019 and 2020, they remodeled their swimming pool. Nor did they repair the dangerous conditions, protect guests from or warn guests about the dangerous conditions, or provide supervision of the guests in the pool after sunset. The Browns asserted the Furgursons' failure to do so also proximately caused Chris's death. Additionally, the Browns alleged "that 'but for' the dangerous conditions that existed in the . . . [pool], [Chris] would not have suffered a drowning incident at all and/or an extended drowning incident of being undetected and under water [for] over four minutes and 17 seconds and therefore would not have died." (Boldface and underscoring omitted.)

The FAC omitted nearly every reference to alcohol and intoxication in the original complaint and eliminated any

8

reference to guests being impaired.  The few alcohol-related references that remained sought to distance the FAC from any theory involving alcohol.  First, the FAC alleged that guests did not see Chris for over four minutes and that "[o]ne thing is certain—the visual ability of the guests . . . was clearly unrelated to the alleged consumption of alcohol by [Chris]."

Second, the FAC conceded that the Furgursons "were immune from liability" "based on any theory of liability relating to [Chris's] consumption of alcohol."  However, the Browns alleged that pursuant to *Berman v. Bromberg* (1997) 56 Cal.App.4th 936, they were entitled to assert "different and independent theories of liability against [the Furgursons] based on the same general facts," even if inconsistent with other allegations.  The Browns alleged they discovered additional material facts demonstrating dangerous conditions at the Furgursons' pool after conducting factual and expert discovery.  They did not, however, explain why or how they determined after the filing of the original complaint that alcohol intoxication did not cause Chris's death.

Third, the FAC alleged that the attached death certificate was not "fatal" to the Browns' claims because the medical examiner conceded at deposition that "acute alcohol intoxication" meant only that Chris had alcohol in his system at the time of his death and did not mean that he died from alcohol poisoning.  According to the Browns, the medical examiner "could not testify to a degree of medical certainty that [Chris] would have died of alcohol poisoning even if [he] had not been under water for any period of time" and "testified that anyone can drown in a pool at any point."  (Capitalization, boldface, and underscoring omitted.)

9

Based on the medical examiner's deposition, the Browns argued that the cause of death remained a question of fact.

## D.    Demurrer to FAC

On May 31, 2024, the Furgursons demurred to the FAC, arguing the social host immunity statute continued to bar the Browns from stating a claim against them for wrongful death or premises liability.[5]  The Furgursons asserted that although the allegations in the FAC seemed to rely on physical defects as causing Chris's death, such allegations contradicted the Browns' prior judicial admission that Chris's alcohol consumption was the but-for cause of his drowning and death.  The Furgursons further argued the FAC was a sham pleading because in addition to contradicting this admission, the FAC omitted without sufficient explanation the original complaint's many references to "alcohol," "impaired party guests," and "intoxication."  Thus, the Browns' "allegations regarding the slope[,] radius, color of the pool tiles, and the alleged inadequate light . . . are all irrelevant because [the Browns] have already judicially admitted that [Chris's] death was caused by his alcohol consumption and intoxication, and it can never be the design of the pool alone that caused [Chris's] death."  The allegation that alcohol consumption caused Chris's death meant "the sweeping immunity of the social host statute" applied.  "Therefore, there can never be an alternative theory alleged that does not include or sets aside the issue of alcohol."  The Furgursons also argued that the inadequate

---

[5] The Furgursons also filed a motion to strike portions of the FAC.  After granting the demurrer, the trial court deemed the motion to strike moot.

lighting and pool visibility went to the issue of a failure to supervise.

In opposition, the Browns argued the FAC "set forth independent theories of liability . . . that have nothing to do with the service and/or consumption of alcohol." (Italics and boldface omitted.) Therefore, the FAC was not a sham pleading and did not contain contradictory allegations. The Browns also argued that their theory of inadequate lighting was not new and that they had adequately explained that they discovered facts that gave rise to their new allegations only upon conducting discovery. Further, the Browns argued that as property owners, the Furgursons owed a duty to warn their guests of dangerous conditions present on the property or remedy them.

In reply, the Furgursons responded that although a complaint may plead inconsistent causes of action, it may only do so if there are no contradictory or antagonistic facts. Here, the Browns could not ignore and remained bound by their prior allegations that alcohol intoxication caused Chris's drowning and death. Because such intoxication was a substantial factor in causing that death, the social host immunity doctrine continued to bar the Browns' claims. The Furgursons further argued the Browns did not carry their burden to demonstrate that they could amend their pleading to cure the identified defects.

The trial court sustained the demurrer without leave to amend. In its written ruling, the court observed that the FAC omitted allegations relating to alcohol consumption and causation and that the Browns failed to provide a reason for omitting those allegations. The court distinguished *Berman v. Bromberg, supra*, 56 Cal.App.4th 936, stating that *Berman* involved new legal theories based on the same set of facts. "*Berman* observed that

11

the prior allegations 'even if true and even if read into the . . . amended complaint, are immaterial to the legal theories set out in the . . . amended complaint. Thus, the prior allegations do not undermine or destroy the causes of action in the . . . amended complaint.' . . . [¶] Here, unlike in *Berman,* the allegations from the original verified complaint undermine the FAC. Moreover, [the Browns] do not explain how the social host immunity does not apply here, especially when taking into account [the Browns'] prior allegations in their verified complaint." The Browns "d[id] not provide authority to show that the allegations involving the chlorine dispenser, pool radius, and lighting are enough to provide an exception to the 'sweeping civil immunity' in section 1714(c)." (Fn. omitted.)

After the trial court entered judgment in the Furgursons' favor, the Browns timely appealed.

## DISCUSSION

### A.   Standard of Review

" 'A demurrer tests the legal sufficiency of the complaint.' " (*K.C. v. County of Merced* (2025) 109 Cal.App.5th 606, 616, review granted June 25, 2025, S290435.) " ' "We review the ruling sustaining the demurrer de novo, exercising independent judgment as to whether the complaint states a cause of action as a matter of law." [Citation.] " '[W]e give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.' " ' " (*Dominguez v. Bonta* (2022) 87 Cal.App.5th 389, 398.) "We also consider any exhibits to the complaint." (*Panterra GP, Inc. v. Superior Court* (2022) 74 Cal.App.5th 697, 708.) " ' "When conducting this independent review, appellate courts 'treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions,

12

deductions or conclusions of law.' " ' [Citation.] Similarly, we '
"may not consider conclusions of fact . . . , opinions, speculation or
allegations which are contrary either to law or to judicially
noticed facts[.]" ' [Citation.] We also do not accept as true '
"adjectival descriptions" . . . or "unsupported speculation." '
[Citation.] We may, however, 'consider matters subject to judicial
notice . . . .' " (*Dominguez*, *supra*, at p. 398, fn. omitted.) "On
appeal, the plaintiff bears the burden of demonstrating that the
superior court erred in sustaining the demurrer." (*K.C.*, *supra*, at
p. 616.)

When a demurrer is sustained without leave to amend, we
decide whether there is a reasonable possibility that the defect
can be cured by amendment. (*City of Dinuba v. County of Tulare*
(2007) 41 Cal.4th 859, 865.) If it can be, the trial court has
abused its discretion, and we reverse. (*Ibid*.) However, "[t]he
onus is on the *plaintiff* to articulate the 'specifi[c] ways' to cure
the identified defect, and absent such an articulation, a trial or
appellate court may grant leave to amend 'only if a potentially
effective amendment [is] both apparent and consistent with the
plaintiff's theory of the case.' " (*Shaeffer v. Califia Farms, LLC*
(2020) 44 Cal.App.5th 1125, 1145.)

## B.     The Sham Pleading Doctrine

### 1.     *General Legal Principles*

"Courts generally disregard original pleadings in favor of
amended pleadings. [Citation.] However, if an amended
pleading attempts to avoid an earlier defect, courts evaluate the
prior pleading to determine if the amendment is a sham.
[Citation.] Relevant facts which make a pleading defective
cannot simply be omitted. [Citation.] This is particularly so
when the original pleading is verified." (*Webb v. City of Riverside*

13

(2018) 23 Cal.App.5th 244, 256.) "If plaintiff verifies the complaint . . . , it constitutes an oath that each allegation therein is true . . . ." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2025) § 6:228, italics omitted; see *id*. at § 6:247.1 ["even unverified conflicting facts in subsequent complaints may be barred"].)

" 'Facts established by pleadings as judicial admissions " 'are conclusive concessions of the truth of those matters, are effectively removed as issues from the litigation, and may not be contradicted . . . by the party whose pleadings are used against him or her.' " ' " (*BMC Promise Way, LLC v. County of San Benito* (2021) 72 Cal.App.5th 279, 286.) Absent a satisfactory explanation why the earlier admissions were incorrect, the self-destructive allegations in a prior pleading may be read into the amended complaint and the allegations inconsistent therewith treated as a sham and disregarded. (*Owens v. Kings Supermarket* (1988) 198 Cal.App.3d 379, 384; see also *Smyth v. Berman* (2019) 31 Cal.App.5th 183, 196 [finding new factual allegations were inconsistent and the explanation for the change "not plausible"].)

2. *The Browns May Not Repudiate Their Prior Verified Allegations Regarding the Role of Alcohol in Chris's Death*

An unavoidable reading of the original complaint is that Chris would not have drowned if he had not been intoxicated. (See *Biles v. Richter*, *supra*, 206 Cal.App.3d at p. 330 ["[W]e cannot simply disregard the many references throughout the complaint to the guests' consumption of alcoholic beverages. Rather, we are enjoined to give the complaint a reasonable interpretation, reading it as a whole and its parts in their

14

context"].) The complaint states as much in its allegations that "[b]ut for" the Furgursons "encourag[ing] and permitt[ing Chris] to use the poorly lit [pool] in the evening" "while impaired" or "while dangerously intoxicated," "he would have survived." The attached death certificate corroborated these verified allegations. Further, the complaint included pervasive references to intoxication and impairment that indicate the other guests' impaired state impacted their ability to timely rescue Chris. Indeed, the complaint described the Furgursons' party as "a chaotic environment where . . . [the Furgursons] encourage[d] and promote[d] dangerous levels of intoxication in [their] pool party guests."

The FAC omits most of these prior references. In the few instances where the FAC refers to alcohol, it is to assert that alcohol is now irrelevant to the Browns' claims and to challenge the medical examiner's conclusion that "acute alcohol intoxication" led to the drowning. Thus, although the FAC is artfully pleaded to avoid stating so expressly, the overall effect is a repudiation of the Browns' prior judicial admission that alcohol intoxication (both that of Chris and of other guests) caused Chris's death.

Citing *Berman v. Bromberg*, *supra*, 56 Cal.App.4th 936, the Browns argue that omitting references to alcohol consumption from their FAC does not render it a sham pleading. *Berman* held that the sham pleading doctrine does not apply when a plaintiff alleges different legal theories based on the same set of general facts as set forth in the superseded pleading. (*Id*. at p. 946.) In such an instance, a plaintiff may omit factual allegations that are irrelevant and immaterial to the newly asserted legal theories. (*Id*. at p. 949.) The Browns argue that because they alleged "new

15

and independent legal theories of liability" for which alcohol consumption is "completely unrelated," they properly left out references to alcohol in the FAC.

*Berman* is inapposite. The Browns did not change their legal theory. The FAC continues to assert claims for wrongful death and premises liability based upon the Furgursons' alleged negligence and dangerous conditions on their property. The FAC merely specified alleged defects that the Browns contend are additional dangerous conditions beyond those listed in the original complaint. The Browns explained the reason for this change was that they learned these facts only after extensive discovery. However, the FAC also changed in that it omitted any reference to alcohol playing a part in Chris's drowning, and the Browns offer no explanation why they now contend that alcohol consumption did not cause the drowning. Notably, although the trial court stated in its ruling that the Browns did not adequately explain the reason for omitting the allegation that alcohol caused Chris's death, the Browns continued to fail to address it on appeal. Thus, the trial court properly concluded the FAC was a sham pleading and read the allegations relating to the intoxication of Chris and other guests back into the FAC.

**C.     The Browns Have Not Demonstrated the Trial Court Erred in Finding the Social Host Immunity Statute Barred Their Claims**

1.     *Section 1714 and Its Judicial Interpretation*

Section 1714, subdivision (a) declares that everyone is liable for his or her own negligent or willful acts that cause injury to another. "That general principle is qualified, however, in

16

subdivisions (b) and (c) added as part of . . . 1978 amendments."[6] (*Strang v. Cabrol, supra*, 37 Cal.3d at p. 722.) As currently written, subdivision (b) of section 1714 states, "It is the intent of the Legislature to abrogate the holdings in cases such as *Vesely v. Sager* (1971) 5 Cal.3d 153, *Bernhard v. Harrah's Club* (1976) 16 Cal.3d 313, and *Coulter v. Superior Court* (1978) 21 Cal.3d 144 and to reinstate the prior judicial interpretation of this section as it relates to proximate cause for injuries incurred as a result of furnishing alcoholic beverages to an intoxicated person, namely that the furnishing of alcoholic beverages is not the proximate cause of injuries resulting from intoxication, but rather the consumption of alcoholic beverages is the proximate cause of injuries inflicted upon another by an intoxicated person." (*Ibid*.) Therefore, "no social host who furnishes alcoholic beverages to any person may be held legally accountable for damages suffered by that person . . . resulting from the consumption of those beverages." (*Id*., subd. (c).)

Courts have interpreted section 1714, subdivisions (b) and (c) broadly. Our high court characterized the 1978 amendments as providing " 'sweeping civil immunity.' " (*Ennabe v. Manosa, supra*, 58 Cal.4th at p. 707; *Strang v. Cabrol, supra*, 37 Cal.3d at p. 724; *Cory v. Shierloh, supra*, 29 Cal.3d at p. 436.) In *Cory*, the court explained that the statute had a rational basis because "[t]he Legislature . . . reasonably might have assumed that the imposition of sole and exclusive liability upon the consumer of

_____

[6] The 1978 amendments made parallel changes to Business and Professions Code section 25602, which concerns the sale of alcohol to an obviously intoxicated person. (*Strang v. Cabrol, supra*, 37 Cal.3d at p. 723.)

17

alcoholic beverages would encourage some heightened sense of responsibility in the drinker for his acts, thereby ultimately reducing the frequency of alcohol-caused injuries." (*Cory*, *supra*, at p. 440.)

Since the 1978 amendments, courts have resisted efforts to plead around the broad immunity the statute affords. In *Andre v. Ingram* (1985) 164 Cal.App.3d 206, the court explained, "The effect of the statute cannot be avoided by alleging the wrong, not as furnishing the alcohol, but as failing to warn the passenger or stop the [intoxicated] driver." (*Id*. at p. 208.) The following year, in *DeBolt v. Kragen Auto Supply, Inc*. (1986) 182 Cal.App.3d 269, the court rejected the plaintiffs' efforts to cast their claim not as negligently providing alcohol to a minor, but for asking the minor "to leave [a party] knowing she was intoxicated and not able to safely drive and knowing she would drive her car nevertheless, and furthermore not attempting to supply or actually supplying a safer alternative." (*Id*. at p. 273, fn. omitted.)

In *Biles v. Richter*, *supra*, 206 Cal.App.3d 325, the appellate court again broadly interpreted the statute to hold that a social host has no duty to supervise intoxicated guests. (*Id*. at p. 327.) There, the plaintiff and other social guests drank at the defendants' home. (*Id*. at pp. 327-328.) In the evening, the plaintiff was put to bed and the defendants retired while other guests remained in their living room, smoking cigarettes on the couch. (*Id*. at p. 328.) A fire occurred at the premises and injured the plaintiff. (*Ibid*.) The *Biles* court concluded that "even assuming a duty of care, [the] defendants are not liable to [the] plaintiff. . . . [T]o the extent [the] plaintiff's injuries were caused by [the] defendants' guests' consumption of alcohol furnished by [the] defendants, [the] defendants are immune from liability

18

pursuant to [section 1714(c)]. To the extent [the] plaintiff's injuries were not caused by the guests' consumption of alcohol, [the] defendants are not liable because they were not negligent as a matter of law for failing to supervise sober adult guests who smoked cigarettes." (*Id*. at p. 329.)

Thus, *Biles* rejected the plaintiff's "apparent attempt to avoid the statutory immunity" by "posit[ing] liability not on the act of furnishing alcoholic beverages but on the separate act of failing to supervise persons to whom the beverages were furnished." (*Biles v. Richter*, *supra*, 206 Cal.App.3d at p. 330.) It stated, "If a plaintiff could hold a social host liable for failure to supervise those to whom he had furnished alcohol, the immunity afforded by [section 1714(c)] would be seriously eroded. This is because the duty of supervision is premised upon the need to look after those whose coordination and judgment have been adversely affected by the consumption of alcohol. If allowed, the duty would appear to exist in many if not most cases where alcohol is furnished by social hosts." (*Id*. at p. 331.)

The Browns cited no contradictory cases, and our independent research has identified only a single opinion that stands in contrast to the otherwise uniformly expansive interpretation of section 1714(c). After the 1978 amendments, but prior to every case mentioned above save *Cory*, *Blake v. Moore* (1984) 162 Cal.App.3d 700, 701 held that a plaintiff who drove his friend's car while drunk could pursue a claim against his friend for negligent entrustment of the car notwithstanding the immunities set forth in section 1714, subdivisions (b) and (c) and a parallel statute, Business and Professions Code section 25602, subdivisions (b) and (c). *Blake* held "the immunity for the supplier of alcoholic beverages protects only against the risks

19

directly flowing from the supply of the liquor" (*Blake*, *supra*, at p. 702) and therefore the social host immunity statute "should not be construed in a fashion which would preclude liability based on other concurrent causes." (*Id*. at p. 704.)

*Blake*'s narrow construction of section 1714(c) conflicts with the Supreme Court's description of the social host immunity statute as providing sweeping protection, and unsurprisingly later cases have departed from *Blake*'s proposed approach. For example, *Knighten v. Sam's Parking Valet* (1988) 206 Cal.App.3d 69, a case that concerned Business and Professions Code section 25602, "disagree[d] with *Blake*'s statement that [the statute] provides only 'a narrow "furnishing" [immunity]' [citation], inapplicable wherever allegations of furnishing alcohol are combined with other allegations." (*Knighten*, *supra*, at p. 78.) *Knighten* explained, "The California Supreme Court has characterized this statutory immunity as 'sweeping' [citation] and . . . has described it as imposing 'sole and exclusive liability upon the consumer of alcoholic beverages' [citation], an interpretation supported by the legislative history . . . and by the statutory language proclaiming consumption of alcohol rather than the serving of it as '*the* proximate cause of injuries' [citation]." (*Ibid*.)

 2. *Analysis*

The Browns contend the trial court erred in sustaining the demurrer without leave to amend because the FAC "alleged numerous independent theories of liability against the [Furgursons] that were unrelated to the consumption of alcohol, including, but not limited to, the [Furgursons'] swimming pool (1) had an inadequate slope radius between the side of the pool and the pool floor, (2) had slippery dark blue tile, and (3) had inadequate lighting, making it so the other guests were unable to

see Chris . . . under water for over four minutes and 17 seconds." They argue "the social host immunity [statute] is inapplicable when an invited residential guest has independent theories of liability against the homeowner completely unrelated to the consumption of alcohol." The Browns posit the following example as a relevant comparison for this case: "Homeowner knows that he has a broken fireplace inside his house that is constantly leaking natural gas . . . . Homeowner invites [g]uest (over age of 21) to his home, serves [g]uest alcohol, the [g]uest becomes intoxicated, the [h]omeowner asks the [g]uest to light a match in order to light a candle, and the house blows up . . . ."

We do not agree with the Browns' framing of the issue. As discussed above, one must read the allegations from the original complaint relating to alcohol consumption into the FAC. Critically, this includes the Browns' admission that, if Chris and other guests had not been intoxicated, Chris would not have died. Thus, unlike the hypothetical they draw, the Browns have not alleged any factual theory of causation independent of alcohol consumption—which, in the case of Chris, resulted in "acute alcohol intoxication" just before his death. It is well established that such intoxication adversely affects a person's judgment and coordination. (See *Biles v. Richter*, *supra*, 206 Cal.App.3d at p. 331.) The Browns' claims therefore had to contend with the application of the social host immunity doctrine when intoxication is at least *a* substantial factor. They did not.

As described above, the overwhelming weight of authority analyzing the social host immunity statute indicates the trial court here correctly concluded that when alcohol is a substantial factor causing the plaintiff's injury, the Legislature has determined as a matter of policy that intoxication is " '*the*

21

proximate cause of injuries' " rather than the responsibility of the person furnishing the alcohol. (*Knighten v. Sam's Parking Valet*, *supra*, 206 Cal.App.3d at p. 78, quoting § 1714(c).) It is the Browns' burden on appeal to demonstrate that the court erred. (*K.C. v. County of Merced*, *supra*, 109 Cal.App.5th at p. 616, review granted.) The FAC does not contend that other causes concurrently combined with alcohol consumption to cause Chris's death. Nor do the Browns so contend on appeal; indeed, the hypothetical examples they provide to support their argument (such as the gas fireplace one mentioned previously) involve situations where alcohol consumption played no role whatsoever and the injury would have occurred regardless of any alcohol consumption.[7]

In short, a necessary predicate to the Browns' claim of error is ignoring their prior allegations that, but for Chris's acute intoxication, he would not have drowned. The sham pleading doctrine prevents us from doing so. Once those improperly omitted allegations are considered, as they must be, the Browns fail to carry their appellate burden to show the court erred in sustaining the demurrer. They do not offer any cogent explanation of why the social host immunity statute would not bar their claims given (1) their prior admission that Chris's alcohol consumption was the but-for cause of his death, and (2) section 1714(c)'s language indicating that in the circumstances before us Chris's alcohol consumption was also the

---

[7] Because the Browns did not argue that alcohol consumption and the alleged design defects concurrently caused Chris's death, we do not express an opinion whether section 1714(c) would bar a social host's liability in such a situation.

proximate cause of his injuries.  (*Knighten v. Sam's Parking Valet, supra,* 206 Cal.App.3d at p. 78.)

Additionally, the Browns do not specify how they would amend their complaint to cure the defect.  We thus conclude the trial court did not err in not permitting the Browns to do so.

## DISPOSITION

The judgment is affirmed.  The Furgursons are awarded their costs on appeal.

NOT TO BE PUBLISHED

WEINGART, J.

We concur:

BENDIX, Acting P. J.

M. KIM, J.